GONU, appellant, *v.* RUSSELL, respondent.

LOCATION OF QUARTZ LODES — *forfeiture* — *resumption of work.* The Russell lode was located prior to May 10, 1872, and the record title was in A. a number of years before July 21, 1877. A. performed work eighteen days on the property, between December 7, 1875, and December 17, 1875, and did no more work thereon until July 19, 1877. B. relocated this lode July 3, 1877, under the name of the Empire lode by posting his notice of location on a stake at the discovery shaft of the Russell lode. A. entered upon the lode July 19, 1877, and worked about one hour, when B. run the lines of the Empire lode, and cut and placed thereon four corner stakes. The notice of B.'s location was recorded July 20, 1877. *Held,* that the act of B. in placing the notice on said stake did not constitute a location of the lode, under the laws of the United States. *Held, also,* that A. had the right to resume work on the Russell lode at said time and thereby defeat a forfeiture of his title. *Held, further,* that the acts of B., after the resumption of work by A., did not impair A.'s rights to the Russell lode.

*Appeal from Third District, Lewis and Clarke County.*

THE action was tried before WADE, C. J.

CHUMASERO & CHADWICK, for appellant.

Respondent was required to perform work or make improvements on the Russell lode, annually. Upon his failure so to do, the lode was open to relocation in the same manner as if no location had ever been made, provided work was not resumed after failure and before a relocation. U. S. Rev. Sts., § 2324. No work was done by respondent after December, 1875, until after the location by appellant July 3, 1877. The lode was subject to relocation, when appellant posted his notice of relocation and took possession. At this time, work had not been resumed by respondent, and his right to the possession and to resume work thereon had terminated.

Where several acts are required to be done to perfect a location under the laws of the United States, they need not be done simultaneously. The doing of any one necessary act confers the right to go on and perform the other requirements within the time recognized by law, and the last act done relates back to the first and should be considered as done on that day. Discovery, taking possession, notice, record and staking are all necessary to a valid location, but it is not material which is first done, if all are done within the time required by law.

The relocation of an abandoned claim is to be treated as if the prospector had located a new discovery. *Murley* v. *Ennis*, 2 Col. 300.

Under the laws of the Territory, the locator has twenty days within which to perfect his location. Sts. 1876, 127. This is a reasonable time.

. Respondent could not resume work after his failure to represent the lode, and appellant in good faith took possession thereof and endeavored to comply with the law within the time allowed for such compliance. Under any other construction, a party once locating a claim could do no work thereon and fail to comply with the law, until a new locator commenced proceedings of relocation, and then resume work and defeat the policy of the law, which is the development and sale of the mineral lands of the United States.

E. W. & J. K. TOOLE, for respondent.

Appellant's notice does not form one of the acts required in making a location or relocation, under the laws of congress or this Territory. No local regulation is shown which gives it validity. The notice did not confer on appellant constructive possession.

Under the act of congress, the locator of a lode must perform three acts: 1. Discover a vein. 2. Locate the claim. 3. Record the same. U. S. Rev. Sts., §§ 2322, 2324.

Forfeitures are odious in law, and never occur by implication. Respondent had the right to enter the lode at any time before a relocation was completed by appellant. The notice was a fraud.

It designated stakes not put up, and described a piece of ground existing only in imagination. The notice and stakes must correspond with the record. A party cannot post his notice of location and afterward place his stakes regardless of the notice. The staking should be done before the notice is posted. Appellant's notice is without any sanction in law or custom. No act necessary to a location was done by appellant before the posting of the notice. *Murley* v. *Ennis*, 2 Col. 305; Week's Min. Lands, 122; *Golden F. Co.* v. *Cable C. Co.*, 12 Nev. 320; *Hess* v. *Winder*, 30 Cal. 349; Copp's Decis. 225, 321–325.

Appellant claims he should have had a reasonable time to put his stakes where they were called for. There is no positive law upon this subject. Appellant should have staked the lode with reasonable diligence, and only a few hours were necessary to do the work.

BLAKE, J. The complaint alleges that the appellant was the owner and possessor of the Empire Quartz lode, September 17, 1877, and that the respondent entered thereon September 17, 1877, and withholds the possession from the appellant. The prayer is for the recovery of the possession and damages for the unlawful detention. The answer denies the allegation of ownership and possession and contains a cross-complaint, which avers that the respondent before the location of the Empire lode was the owner and possessor of the J. H. Russell lode; that he recommenced work upon this property July 17, 1877; and that the appellant has entered on the premises and is removing the quartz therefrom. The answer prays for a decree of title to the premises in the respondent, and an injunction restraining the appellant from working thereon. The replication of the appellant alleges that the J. H. Russell lode is embraced within the boundaries of the Empire lode, and that the appellant entered into the possession of the same July 3, 1877.

There does not appear to be any controversy respecting the facts. The appellant complains of errors in law which occurred in the instructions given by the court to the jury. The J. H. Russell lode was located by the respondent and other parties

prior to May 10, 1872. By location and purchase, the respondent became the owner thereof, and the record title thereto was in his name a number of years before July 21, 1877. The respondent performed work thereon eighteen days between December 7, 1875, and December 17, 1875, and did no other work afterward until July 19, 1877. The appellant relocated July 3, 1877, the J. H. Russell lode under the name of the Empire lode by posting a notice on a stake at the discovery shaft of the J. H. Russell lode. The notice was regular in its description of the boundaries and the stakes at the corners of the Empire lode, and was recorded July 20, 1877, in the proper office. The respondent entered upon the premises and commenced to work July 19, 1877, and about one hour afterward, the appellant run the lines of the Empire lode and cut and placed thereon stakes at its four corners.

The appellant maintains that the respondent failed to perform the labor and make the improvements required by the laws of the United States, and that the property in controversy was subject to relocation July 3, 1877; that several acts are necessary to complete the location of the quartz lode; that the performance of one act by the appellant conferred the right to do the other acts within twenty days; and that the respondent had no right to resume work on the J. H. Russell lode after the appellant had taken possession July 3, 1877.

The statutes of the United States, which are applicable to these questions, provide that "the location must be distinctly marked on the ground so that its boundaries can be readily traced," and that, upon a failure to perform labor, or make improvements, which are specified, "the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns or legal representatives, have not resumed work upon the claim after failure and before such location." The miners of the mining district in which the lode in dispute is situated, did not make regulations "governing the location, manner of recording, amount of work necessary to hold possession" of the same. U. S. Rev. Sts., § 2324.

The legislative assembly of the Territory requires the discoverer of a mining claim to make a record thereof in the office of the county recorder of the county in which the same is situated, within twenty days after its discovery. Sts. 9th Sess. 127, § 1.

There must be a substantial compliance with these statutes. The appellant did not mark on the ground his location of the Empire lode, before the resumption of work by the respondent, and its boundaries could not be traced readily, or otherwise. The law of congress, *supra*, which governs this matter, is the embodiment of one of the most ancient customs that has prevailed among miners. The supreme court of the United States in *United States* v. *Castillero*, 2 Black, 17, one of the most important cases ever heard by this tribunal, reviews the ordinances of Spain and Mexico prescribing the mode of acquiring title to mines, and holds that a strict compliance with their terms and conditions is essential. In a learned opinion, Mr. Justice CLIFFORD says : "Boundaries also must be fixed to carry the adjudication into effect, or rather to complete it, else the title or claim, like other indefinite and uncertain interests in lands, will be void for uncertainty. Marking of boundaries also is essential under all circumstances, whether the mine is situated in public or private lands, compliance with the requirement is essential to show what extent of the public domain has been segregated from the mass of such lands and has passed into private ownership. * * * Public convenience, therefore, in such a case requires that the boundaries should be fixed, and, besides, unless the limits of the pertenencia were fixed and staked, or monuments set, other tribunals, whose duty it is to adjudicate lands to applicants for agricultural purposes, would be subjected to embarrassment and be led into error." This decision was rendered in 1862 and formed the basis of some of the sections relating to mineral lands which were afterward enacted by congress. The necessity of the marking of boundaries has been recognized in the courts of the mining States. *Hess* v. *Winder*, 30 Cal. 349 ; *Golden F. Co.* v. *Cable C. Co.*, 12 Nev. 312. In the last case the court observes: "There is no way of locating a quartz vein except by marking out surface-lines."

The respondent failed to comply with the statutes, *supra*, and did not perform the work on the J. H. Russell lode, which is therein required, but he had the right to defeat the forfeiture of his interest in the property by resuming labor thereon before a location thereof had been made by another. Did the act of the appellant in placing the notice on the stake at the discovery shaft constitute a location according to law? This is the sole question for our determination. The notice did not designate the boundaries, because it defined them by monuments which were not upon the ground. The appellant did not mark his location of the Empire lode on the ground until the respondent resumed work thereon. The law contemplates that the location of a mining claim shall consist of a number of distinct acts, which are independent of each other. The last that may be done does not relate back to the first, and all must be performed before a legal location exists. The owner of the lode which has become subject to relocation can resume work thereon at any time prior to the performance of all these acts. The appellant could not make a valid location of the Empire lode until he had marked the boundaries so that they could be traced readily by means of stakes, monuments, natural objects or any other certain means. The resumption of labor in good faith by the respondent, before the appellant perfected his location, rendered null the prior acts of the appellant.

The instructions of the court state the foregoing propositions and are correct.

*Judgment affirmed.*

---

Note.—The reports of the following cases were published after this judgment had been entered. In *Holland* v. *M. A. G. Q. M. Co.*, 53 Cal. 149, the plaintiffs relocated a quartz mining claim by posting notices upon two trees, one at each end thereof. After the defendant resumed work on the lode, the plaintiffs had the ground surveyed and the boundary lines duly marked. The court held that the plaintiffs had not complied with the provisions of the act of congress, section 2324, *supra*, requiring the marking of the location on the ground. In *Gelcich* v. *Moriarty* 53 Cal. 217, the plaintiffs placed a monument of stones three or four feet high upon the croppings of the lode and posted a notice of their location thereon. The defendants posted their notice upon a similar monument. The court held that both parties failed to mark their locations according to said section. In *Gleeson* v. *Martin W. M. Co.*, 13 Nev. 442, the locators of a lode posted their notice upon the croppings at the discovery point, and placed two stakes, one at the north-west and the other at the south-east end. The stakes were marked properly and were nearly on a line with the croppings of the vein. The court held that the locators complied with said section and that the boundaries could be "readily traced."—B.