*I. E. Barnum* and *J. C. Stallcup*, for plaintiff in error.

*France & Rogers*, for defendants in error.

---

## LEBANON MINING CO. *v.* CONSOLIDATED REPUBLICAN MINING CO.

*(Supreme Court of Colorado, December Term, 1882.—Appeal from the Clear Creek District Court.)*

1.  PLEADING—AMENDMENTS.  A liberal allowance of amendments to pleadings, due regard being had to the rights of parties litigant, often conduces to the furtherance of justice.

2.  PLEADING AND PROOF.   In how far new matter may be set out in replication, and the proof admissible under the pleadings, fully discussed.

3.  TRIAL—PARTIES ENTITLED TO VERDICT OF JURY, WHEN.  If there is evidence which tends to establish the plaintiff's cause of action, or the defendant's case, it is erroneous for the Court to withdraw the case from the jury or to direct a verdict, because it is not for the Court to judge of the sufficiency of the evidence.

BECK, C. J.   The appellee in this case having made application in the U. S. Land Office in Central City to enter the Peru lode mining claim, the appellant filed an adverse claim to a portion of the premises embraced in the application for patent, claiming the same as parcel of its Lebanon tunnel lode No. 3, and brought this suit in support of the adverse claim.

The plaintiff below brings the case here for review, assigning numerous errors, the more serious of which relate to the

action of the District Court in rejecting evidence offered by the plaintiff to prove its title to the premises in dispute, and likewise to the action of the Court at the close of the trial in taking the case from the jury and directing the jury to return a verdict for the defendant as to all the premises except the. vein proper of the Lebanon tunnel lode No. 3, which it directed to be awarded to the plaintiff.

Motions for new trial and in arrest of judgment were made by the plaintiff, and overruled by the Court, and judgment was entered in favor of the plaintiff for "the vein proper of the tunnel lode No. 3, discovered in the Lebanon tunnel 227 feet from its mouth, and that they have a writ of possession therefor."

All the rulings complained of were objected to on the trial, and exceptions duly reserved.

The exclusion of evidence offered in support of plaintiff's title is justified by counsel for the defendant, on account of the insufficiency of the plaintiff's pleadings; on the other hand, plaintiff's counsel assign for error that the Court, on motion of the counsel for defendant, struck the plaintiff's amended complaint from the files; that it afterwards refused to permit an amended complaint to be filed, and inconsistently thereafter permitted the defendant to file an amended answer.

Inasmuch as the rulings upon the pleadings involve matters of judicial discretion, we will dismiss the first four assignments of error, which relate thereto, with the following suggestions and observations: A liberal allowance of amendments to the pleadings, in cases of this nature, due regard being had for the rights of each party litigant, would often conduce to the furtherance of justice. It is probable that most of the rejected testimony would have been adjudged admissible by the Court below, under the amended complaint, if the filing of the same had been permitted. It is of the highest importance, in trials involving the determination of valuable rights, that the pleadings of the parties should be formal and sufficient, so as clearly to present the substantial issues to be tried. The Legislature has made ample provision for the making of necessary amendments to all pleadings, vesting the authority for its exercise in the presiding Judge, and the best interests of suitors will be

advanced, and much valuable time saved, by a generous but wise exercise of the discretion.

Before passing to the other branches of the case, viz.: a consideration of the errors assigned in respect to the excluding of evidence offered in support of the plaintiff's title, and the action of the Court in withdrawing the case from the consideration of the jury, we will take a cursory view of the nature and incidents of the action, as they appear in the record before us, and of the issues as presented by the pleadings.

The whole evidence, that which was offered and rejected, as well as that which was received, tended to show that the plaintiff, the Lebanon Mining Company of New York, purchased a group of mines on Republican mountain, in Griffith mining district, Clear Creek county, several years ago, the dates ranging from 1870 to 1872.   These mining claims bore the names, at the time of purchase, of Sallie Ward, L. W. Powell, east half of George D. Prentiss, and the easterly portion of the Peru lodes.

In 1871 the plaintiff commenced the work of driving a mining tunnel into this mountain, in the immediate vicinity of this group of mines.   In the month of November or December, 1871, the lode in controversy was struck in the tunnel, at a point 227 feet from its mouth or face, and named Lebanon tunnel lode No. 3.

After the passage by Congress of the mining act of May 10, 1872, which, among other things, made provision for the protection of tunnel rights, the tunnel site was laid out, staked, and a location certificate thereof recorded in the recorder's office of Clear Creek county.

This vein so cut in the tunnel was drifted upon a distance of about 70 feet on either side of the tunnel, and otherwise developed, and a location certificate thereof made out and recorded on the 27th day of March, 1873, claiming 750 feet linear and horizontal measurement easterly, and the same distance westerly, from the center of the tunnel, and 25 feet in width on each side of the center of the crevice.   Work upon this lode appears to have been continued by the plaintiff ever since. The superintendent of the plaintiff testified that the sum of $2,000 was expended thereon in the years 1873 and 1874.   A

shaft was sunk upon it from the tunnel level, and an air shaft raised from the tunnel to the surface. The lode was afterwards surveyed and staked on the surface, the lines of the survey corresponding with the previous location, except that the width of the claim was made 75 feet on either side of the center of the vein, instead of 25 feet on either side, as before.

Among other proofs offered by the plaintiff on the trial, and rejected by the Court, were offers to prove that the lines of the tunnel lode No. 3, as surveyed upon the surface, included the several claims long previously purchased by the plaintiff, as before stated, under the names of Sallie Ward, L. W. Powell, George D. Prentiss, and Peru, and that they had ever since been occupied by it.

Defendant claims to be the owner of the Peru lode, and plaintiff proposed to prove that the three lodes known by the names of the Sallie Ward, the Peru, and the Tunnel Lode No. 3, were in fact one and the same lode, which the plaintiff claims to own under the name of Tunnel Lode No. 3.

As counsel for defendant justify the action of the Court in rejecting the proposed evidence on the ground that it was irrelevant and incompetent under the pleadings, we will next direct our attention to the pleadings, for the purpose of ascertaining whether the testimony offered was competent under the issues presented thereby.

The complaint alleged that the plaintiff, on the first day of June, 1879, and at the time of the trial, was the owner and in actual possession of the Lebanon tunnel No. 3 lode mining claim, 1,500 feet in length by 75 in width. That the defendant, on the first day of June, 1879, wrongfully entered upon that portion of said claim which is intersected by the exterior lines of a claim known as the Peru mining claim, and ever since had withheld possession of said parcel of the Lebanon tunnel lode No. 3 from the plaintiff.

The title of the plaintiff is set out in the following language: "It claims the right to occupy and possess said premises by virtue of full compliance with the local laws and rules of miners in said mining district, the laws of the United States, and of the State of Colorado, by actual prior possession and by purchase, and by location and pre-emption as a lode

mining claim, located on the public domain of the United States."

The answer denied, upon information and belief, all the allegations of the complaint.

For a second defense, the defendant alleged title in itself to the premises in controversy, as parcel of the Peru lode, "by virtue of full compliance with the local rules and customs of miners, the laws of the United States, and of said State, by discovery and location, and by actual prior possession, and by purchase and location."

The replication filed to said answer, denies that defendant is, or ever was, owner of the premises in controversy; alleges that plaintiff is owner of the lode and premises called by the defendant the Peru lode; avers purchase by the plaintiff on January 10, 1871, of the Sally Ward lode from one J. Warren Brown, who was the owner thereof and in possession of the same, whereby plaintiff then became, and now is, owner thereof; averring that the lode so purchased is identical with the property claimed by both plaintiff and defendant, but alleging that the title claimed by the defendant to said property is subsequent to the title so conveyed by Brown to the plaintiff.

Defendant's counsel take the position that the allegation of the plaintiff's ownership of the Sallie Ward in the replication, is a clear departure from the allegations of the complaint. In support of this position, they cite the case of *Vattier* v. *Hinde*, 7 Pet., *254.

This was a suit in chancery, involving title to a lot of land in Cincinnati, decided in the Supreme Court of the United States in 1833. The opinion holds that the principles, rules and usages of the Court of Chancery in England, under which the Courts of the United States were then acting, would not permit a special replication to be filed in a chancery cause without leave of the Court, whereby a new case from that stated in the bill, should be made by the replication.

In respect to the above authority, we have only to say, first, that the pleadings in the case at bar must be construed by the provisions of our Code of Civil Procedure, and not by the rules and usages of the ancient Court of Chancery; secondly,

that the averments in the replication concerning the Sallie Ward lode may be regarded, to some extent, as new matter from that stated in the complaint, but that they constitute a clear departure from the allegations of the complaint, and therefore make a new and different case, cannot be conceded.

Plaintiff, in its complaint, designates the premises in controversy as parcel of Lebanon tunnel lode No. 3, and claims title thereto derived in the following various ways: By purchase, by location and pre-emption, by actual prior possession, and by full compliance with National and State laws, and with the local laws and rules of miners of Griffith mining district.

The defendant, in its answer, takes issue upon each allegation of the complaint, and asserts title to said premises in the defendant at and before suit brought, as parcel of the Peru lode mining claim. It claims to have derived its title in the same several ways specified in the complaint.

Up to this point neither party has stated when their several alleged titles were acquired—from whom their titles by purchase were derived, nor is there a specific averment in either complaint or answer that the several titles were acquired under the name by which the property is now therein claimed. The replication, however, goes further in relation to the title of the plaintiff, claimed to have been derived by purchase, and gives the name of the grantor, the name by which the premises were granted, and the date of the grant, the date being January 10, 1871. It also alleges that the property granted is the identical property described in the complaint, the paragraph concluding with the averment that the title claimed by the defendant was subsequent to the title so acquired by the plaintiff.

The replication contains a statement of specific facts, which, if true, show that notwithstanding the facts alleged in the answer, the defendant is not entitled to recover. These statements of the replication do not constitute a departure from the allegations of the complaint, and whether they be denominated new matter, or matter in avoidance, their insertion is permissible under the Code, which makes provision therefor. If it be new matter, an issue of fact arises upon it;

if matter in avoidance, it is to be deemed controverted on the trial. Code of Civil Pro., Secs. 153–72.

In either case issues are presented by the pleadings as framed, which entitle the parties to introduce, before the jury, such evidence of title, coupled with actual occupation and development as they may have, and to alternate their proofs until the point is reached where the title of one antedates that of the other. It may then result that such prior title must be recognized as the superior, although the record thereof may not appear to be entirely regular. (*Sears* v. *Taylor*, 4 Colo., 41; *Kinney* v. *Con. Virginia M. Co.*, 4 Saw., 382). It may also be observed that no exception appears to have been taken to this replication before the trial, consequently, according to the principles of pleading, its sufficiency under the facts and circumstances of this case must be regarded as admitted.

While the complaint and replication cannot be regarded as models of pleadings adapted to the presentation of claims of the nature involved in this proceeding, yet under like circumstances, where objection is not made before entering upon the trial, and where issues thereon are joined by answer and by operation of the statute, as in this case, such pleadings are sufficient to entitle the parties to introduce proof of their respective rights and claims, and the rights and claims of their grantors and privies in interest. Code of Civil Procedure, Secs. 249, 256.

The plaintiff produced testimony to the effect that it had been in actual possession and occupation of the premises in controversy ever since the conveyances thereof to it before named, and that such possession had not been disturbed from the year 1871 down to the application by defendant for a patent in June, 1879.

In this connection plaintiff should have been permitted to offer the proposed proof of its ownership of the Peru lode, and of the Sallie Ward lode, and that said lodes and Tunnel Lode No. 3 were one and the same lode.

The same lode may have different names by which it is known, derived from different locations, and a conveyance of it under either name, if otherwise regular so that it can be as-

53

certained what property was intended to be conveyed, will pass the title.   *Philpots* v. *Blasdel*, 8 Nev., 61.

The first location of the Lebanon tunnel lode *eo nomine*, appears to have been clearly defective in not having the boundaries of the lode staked out on the surface.   *Holland et al.* v. *Mt. Auburn G. Q. M. Co.*, 53 Cal., 149; *Gelcich* v. *Moriarty, et al.*, 53 Cal., 217; R. S. U. S., Sec. 2324.

But if the same lode had been discovered on the surface by the plaintiff's grantors, and at the point in controversy was in the actual occupation of the plaintiff, holding the same under color of title derived by purchase at the time defendant's rights or the rights of its grantors are supposed to have accrued, a valid location by the defendant or its grantors could not, under such circumstances, be made.   A subsequent location extended over a senior discovery in the actual possession of another, is not valid as to the portion thereof occupied by the other party.   *Faxon* v. *Barnard, et al.*, 1 Colorado Law Reporter, 145.

It follows that if plaintiff has been in the actual possession of the entire lode claimed by it, ever since it was cut in the tunnel, having and maintaining priority of right thereto by discovery, by purchase, and by actual workings thereon, as before stated, the plaintiff's re-location certificate of July 28, 1879, although subsequent in date to the re-location certificate of the defendant, would be the better evidence, since it would relate back to the initiatory steps taken by plaintiff for acquiring the title.

Under the foregoing state of facts, if they exist, defendant's efforts to acquire title to any portion of the premises in controversy would be wholly unavailing, for entering upon premises in the actual occupation of another for the purpose of performing the acts necessary to constitute location and possession, amount only to a trespass, and cannot form the basis for the acquisition of title.

We come now to the action of the Court in directing what verdict should be returned by the jury.   This was clearly error.   The character of the evidence admitted on the part of the plaintiff and defendant entitled the parties to have its suf-

ficiency to sustain the issues determined by the jury, instead of by the Court.

It is a rule of law that if there is evidence which tends to establish the plaintiff's cause of action, or the defendant's case, it is erroneous for the Court to withdraw the case from the jury, or to direct a verdict, because it is not for the Court to judge of the *sufficiency* of the evidence. (Proffatt on Jury Trial, Sec. 355.) There was evidence tending to establish plaintiff's cause of action; evidence of a long-continued and uninterrupted possession; of the expenditure of large sums of money in development of the property in dispute, from the workings in the tunnel and upon the surface as well.

This is a possessory action, and proof of possession of a mining claim is always *prima facie* evidence of title. It is presumptive of the ownership declared on, and until overcome by evidence of a superior character, is sufficient to maintain the action. *Sears* v. *Taylor,* 4 Colo., 38.

The strictly legal title is seldom involved in these contests, it being in the Government. The doctrine, therefore, does not apply, that the plaintiff must recover on the strength of his own title, and not on the weakness of his adversary's title.

It has been held that if the plaintiff is unable to prove a valid location in accordance with the mining laws in force, yet if he show actual possession under color of title at the time defendant entered, he may recover in ejectment. And since there is no time prescribed within which the plaintiff shall make application for a patent, his possession may in time ripen into a perfect right. *Harris* v. *Equator Min. and Smelting Co.,* 2 Colo. Law Rep., 63.

It was the province of the jury, in the present case, to determine from the evidence admitted by the Court, under proper instructions as to the effect of the locations and re-locations proved, considered with respect to the proof of actual occupation and the working of the property, whether the plaintiff was not entitled to the surface ground, as well as the crevice or lode sued for. This province of the jury was usurped by the Court, which was error.

The foregoing views are largely hypothetical as to the facts, and are based upon the offers to produce evidence, which were

rejected by the Court.    For the purposes of this appeal we are compelled to assume that the proposed evidence could have been produced.

Being of opinion that several errors occurred on the trial below, the judgment will be reversed, and the cause remanded for another trial.                                                    *Reversed.*

*Jno. A. Coulter*, *W. T. Hughes* and *Hugh Butler*, for appellant.
*Morrison & Fillius*, for appellee.

